U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2012 JUL 13 PM 2: 05

CLERK
BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| James P. Cadieux, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 5:11-cv-185 |
| ) | |
| Patrick R. Donahoe, ) | |
| Postmaster General of the United ) | |
| States Postal Service, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, WITH LEAVE TO AMEND THE COMPLAINT
(Doc. 18)

Plaintiff James P. Cadieux brings this action claiming employment discrimination on the basis of a disability against Defendant Patrick R. Donahoe in his official capacity as Postmaster of the United States Postal Service ("USPS"). Pending before the court is Defendant's motion to dismiss and, in the alternative, for summary judgment. Defendant is represented by Assistant United States Attorney Nikolas Kerest. Mr. Cadieux is representing himself.

I.   **Undisputed Facts.**

In August 1998, Mr. Cadieux was hired by the USPS as a non-career clerk at a mail processing plant in Essex, Vermont. At the time of his hiring, he passed a physical exam and disclosed that he had undergone hip replacement surgery in 1993. Mr. Cadieux states that his hip continues to cause him pain, and that the pain substantially impairs one or more life activities.

In September 2001, Mr. Cadieux began working at the Colchester, Vermont Post Office as a Clerk/Carrier Dual Appointee. His supervisors in Colchester were Postmaster Alan Blaise, Supervisor Jerome Reen, and subsequently Supervisor Cathleen Moss. In

the course of his work as a postal carrier, Mr. Cadieux found that when using his own vehicle, "the extreme stretching required to reach mail boxes" aggravated his hip injury. (Doc. 14 at 3.) He therefore requested, and was granted, the use of a postal vehicle. He alleges, however, that a shortage of postal vehicles "led the supervisory personnel . . . to experience cover[]age and scheduling problems that they attributed to the plaintiff." *Id.*

In 2003, Mr. Cadieux became a Rural Carrier Associate, a non-career position. Over the next few years, he was forced to miss brief periods of work. Specifically, in August 2003 he was away from work for approximately two weeks after suffering a heart attack; in 2006 he missed "days" after surgery to correct "job repetitive damages to tendons" in his right hand; and in 2008 he missed additional time because of a work-related aggravation of his hip injury. (Doc. 25-2 at 1-2.)

Mr. Cadieux also required ninety days of leave in early 2008 after pleading guilty to a charge of negligent driving. He considered asking for his leave to be categorized under the Family Medical Leave Act ("FMLA"), as he was caring for his elderly mother at the time. When he mentioned this idea to Supervisor Moss, she allegedly responded that "[t]here must be punishment." (Doc. 25-2 at 2.)

In February 2008, while Mr. Cadieux was on leave, a Part-Time Flexible ("PTF") rural carrier position became available and he submitted a bid for the position. PTF rural carrier is a career position, and compared to Mr. Cadieux's position at the time, would include higher pay; holiday pay; vacation leave; sick leave; health insurance; disability insurance; employer-match retirement contributions; and retirement benefits. Because of tensions with Ms. Moss, Mr. Cadieux mailed his bid for the position directly to Postmaster Blaise.

On or about February 10, 2008, Mr. Cadieux called Postmaster Blaise, informed him that he would not require FMLA leave, and asked to be placed on leave without pay ("LWOP"). Mr. Blaise granted the request, and during the same telephone conversation informed Mr. Cadieux that he would not be awarded the rural carrier position. Mr. Cadieux understood this statement to mean that his bid had been considered and rejected.

2

In mid-April 2008, while Mr. Cadieux was still out on LWOP, Ms. Moss contacted him to inform him that he was being terminated for failing to communicate with her during his absence. The next day, Mr. Cadieux called Postmaster Blaise to discuss the situation. Mr. Blaise asked Mr. Cadieux when he would be returning to work, and the two agreed that he would return within a few days. Accordingly, the termination was rescinded.

In late April 2008, Ms. Moss called Mr. Cadieux to ask what he wanted done with the bid card in his folder since the bid had been withdrawn. Mr. Cadieux contends that he never withdrew his bid, and that by considering the bid as withdrawn, the USPS failed to properly consider him for the PTF rural carrier position.

Mr. Cadieux claims that after his return to work in 2008, Ms. Moss was "unduly severe and critical of the plaintiff." (Doc. 14 at 5); (Doc. 4 at 3.) She allegedly threatened to reduce Mr. Cadieux's work hours, and authorized another postal worker to remove items from his work station. When Mr. Cadieux injured his hip on the job in June 2008, Ms. Moss allegedly responded angrily and refused to accept his worker's compensation claim, stating that "the post office was not responsible because of the preexisting condition." (Doc. 4 at 4.) During the summer of 2008, Mr. Cadieux complained to the shop steward about Ms. Moss's actions, and claims that thereafter "she relented somewhat." (Doc 25-2 at 3.)

The rural carrier position for which Mr. Cadieux had submitted a bid was ultimately given to Robert Couture. Mr. Cadieux alleges that he had postal service seniority over Mr. Couture, and that Mr. Couture was not disabled. When Mr. Cadieux returned to work in late April 2008, he filed a grievance over the award of the position to Mr. Couture. The union deemed the grievance untimely and declined to pursue it. On October 31, 2008, another PTF position came open. Mr. Cadieux claims that he did not submit a bid because the position was never posted. He discussed the non-posted position with Postmaster Ty Will, who agreed to ask District Management to post the position. The request was denied.

In June 2009, a regular carrier route became available and Mr. Cadieux submitted a bid for it. The route was awarded to Mr. Couture. Mr. Cadieux claims that he filed a union grievance within a few days, but was later notified that the grievance was untimely and would not be pursued. In the spring of 2010, Postmaster Will again submitted a request to District Management that any open PTF positions be posted. In April 2010, Postmaster Will informed Mr. Cadieux that career PTF positions had been removed from the Colchester office.

On May 19, 2010, Mr. Cadieux filed two claims with the Equal Employment Opportunity Commission ("EEOC"). The first claim pertained to the non-posted PTF positions, and the second to the 2008 and 2009 rural carrier positions awarded to Mr. Couture. Both claims were denied in a written decision dated September 15, 2010. Mr. Cadieux appealed to the EEOC's Office of Federal Operation ("EEOC-OFO"). On April 19, 2011, the EEOC-OFO denied his appeal.

On July 21, 2011, Mr. Cadieux filed his Complaint in this case. He has since filed two amended pleadings. The Second Amended Complaint states that on August 12, 2011, his grievance regarding the removal of the PTF positions "from the Colchester Post Office's manifest was determined in his favor and he was awarded a PTF position." (Doc. 14 at 8.) Nonetheless, Mr. Cadieux maintains that he was subjected to unlawful discrimination in violation of the Rehabilitation Act ("RA") and the Americans with Disabilities Act ("ADA"), and that he is entitled to back pay, front pay and costs. He has since conceded that the USPS is not subject to liability under the ADA, and has therefore withdrawn his ADA claim.

## II.     Analysis and Conclusions of Law.

### A.     Standard of Review.

The USPS has moved to dismiss or, in the alternative, for summary judgment. The court must therefore decide how to construe the pending motion. In making this determination, the court notes that the USPS has submitted affidavits and exhibits in

support of its arguments for dismissal, and that Mr. Cadieux has also filed a supplemental affidavit and exhibits.

"Federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a . . . motion [to dismiss], and thus complete discretion in determining whether to convert the motion to one for summary judgment." *Carione v. United States*, 368 F. Supp. 2d 186, 191 (E.D.N.Y. 2005) (internal quotations marks and citations omitted); *see also Cleveland v. Caplaw Enter.*, 448 F.3d 518, 521 (2d Cir. 2006) ("A court may indeed convert a motion for judgment on the pleadings into a motion for summary judgment").

In converting a motion to dismiss to a motion for summary judgment, the court must ensure that Mr. Cadieux had "sufficient notice," *Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir. 1995), and a "reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). "Ordinarily, formal notice is not required where a party should reasonably have recognized the possibility that the motion might be converted into one for summary judgment and was neither taken by surprise nor deprived of a reasonable opportunity to meet facts outside the pleadings." *Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009) (internal quotation marks, brackets, and citation omitted).

Here, the USPS has moved in the alternative for summary judgment. The USPS has also submitted a statement of undisputed material facts, and a notice of summary judgment filing as required when the non-movant is self-represented. In response, Mr. Cadieux filed a statement of disputed facts, and both parties rely upon materials beyond the pleadings. Accordingly, the court will treat the pending motion as one for summary judgment, and finds that no additional notice is required. *See* Fed. R. Civ. P. 12(d) (If "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); *Webster v. Potter*, 746 F. Supp. 2d 635, 638 (S.D.N.Y. 2010) (converting motion to dismiss to motion for summary judgment where "the USPS explicitly raised the issue of equitable tolling in its moving

papers, [*pro se* plaintiff] was informed of his obligation to submit evidence in response to the USPS's motion, and [plaintiff] in fact submitted an affirmation in response that addressed the equitable tolling issue.").

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party carries the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In deciding a motion for summary judgment, the court's function is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The court must construe the facts in the light most favorable to the nonmoving party, and all reasonable inferences and ambiguities must be resolved against the moving party. *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 83 (2d Cir. 2001).

**B.      Whether Mr. Cadieux's Claims Are Timely.**

The USPS first moves for summary judgment on the basis of Mr. Cadieux's alleged failure to exhaust his administrative remedies under the RA. More specifically, the USPS argues that Mr. Cadieux did not initiate contact with an EEO counselor within the time period prescribed by the relevant federal regulations.

Prior to bringing suit under the RA, a federal employee must comply with the administrative claim requirements set forth in the EEOC regulations. *See Downey v. Runyon*, 160 F.3d 139, 145 (2d Cir. 1998). Under those regulations, an employee who believes he has been discriminated against "must initiate contact with [an EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1). If the issue is not resolved after a mandatory counseling period, the counselor must inform the claimant of his right to file a formal administrative complaint within fifteen days of the counselor's notice. *See* 29 C.F.R. §§ 1614.105(d), 1614.106(a), (b). The employee may then file a civil action within ninety days of notice

6

of a final agency decision, or after 180 days from the filing of the EEO complaint if the agency has not yet rendered a decision. *See* 42 U.S.C. § 2000e–16(c); 29 C.F.R. §§ 1614.407(a), (b).

The undisputed record indicates that Mr. Cadieux first contacted an EEO counselor on May 19, 2010. The record also shows that this was his only EEOC complaint. Mr. Cadieux's complaint form (entitled "Information for Pre-Complaint Counseling") characterized the discriminatory conduct as "ongoing," and described that conduct as follows:

> Have been denied upward advancement in my career. This has been going on for perhaps two years. Office has multiple K routes and many routes <u>do not</u> and <u>have not</u> had assigned substitutes. Office <u>requires</u> <u>two</u> PTF positions according to its designation. Placed bid on career position in Feb. 2008 and position was awarded to Robert Couture. PTF position vacated by Tony Asbury <u>has never been posted</u> since he left in Oct. 2008.

(Doc. 18-3 at 1.) Mr. Cadieux also alleged disparate treatment, listing three employees who, he claimed, were "able to bid" on posted PTF positions and were awarded those positions. *Id.* at 2. With respect to the "officials responsible" for these actions, Mr. Cadieux named "District Management." *Id.* On August 20, 2010, after counseling did not resolve Mr. Cadieux's issues, he was notified of his right to file a formal administrative complaint.

On September 7, 2010, Mr. Cadieux filed a formal complaint. The EEOC identified two issues in the complaint: (1) "[i]n October 2008 and July 2009, the Complainant was not converted to a Part-Time Flexible (PTF) rural carrier position"; and (2) "[i]n April 2010, the Complainant became aware the Agency abolished two PTF positions." (Doc. 18-5 at 1.) A final decision was issued on September 24, 2010, concluding that "[t]here is no evidence in the record to show that the Complainant was denied any entitlement in relation to a term, condition or privilege of employment and [he] was not issued any discipline." (Doc. 18-5 at 4.) The decision also found, with respect to the 2008 and 2009 PTF positions, that the claims were time-barred, as Mr. Cadieux "was aware of the time limits for contacting an EEO Counselor and was not

otherwise prevented by circumstances beyond his control from requesting counseling within the 45-day timeframe." *Id.* at 6. As noted above, the decision was upheld on appeal by the EEOC's Office of Federal Operations.

Because Mr. Cadieux did not contact an EEOC counselor until May 19, 2010, the USPS argues that he cannot now seek relief for any events that occurred more than forty-five days prior to that time. Mr. Cadieux does not dispute that his first contact with an EEOC counselor took place well after both the February 2008 and June 2009 job awards. He contends, however, that he is entitled to equitable tolling of the forty-five day deadline. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) ("filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."); *Bruce v. U.S. Dep't of Justice*, 314 F.3d 71, 74 (2d Cir. 2002) (same); *Boos v. Runyon*, 201 F.3d 178, 184 (2d Cir. 2000) ("We have previously stated that the forty-five day requirement is subject to equitable tolling.").

"When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period [he] seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli–Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003) (quoting *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)); *see also South v. Saab Cars USA, Inc.*, 28 F.3d 9, 12 (2d Cir. 1994) (noting that the principles of equitable tolling do not extend to what "is at best a garden variety claim of excusable neglect" (citation and quotation marks omitted)). The doctrine is "highly case-specific," and the "burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff." *Boos*, 201 F.3d at 184-85.

Mr. Cadieux claims that he is entitled to equitable tolling because, after being denied the first rural carrier position posted in February 2008, he fell into a deep depression. During that time, he "rarely answered the phone or dealt with the mail,

8

which piled up on the table, after sitting in the mailbox for many days." (Doc. 25-2 at 2-3.) He reportedly spent most of his time sleeping on the couch, lived day and night in his bathrobe, and gained twenty pounds.

Mr. Cadieux did "decide[] to answer the phone when Ms[.] Moss called" in April 2008 to inform him that he was being terminated for failing to communicate with her during his absence. After subsequent conversations with the Postmaster and Ms. Moss, Mr. Cadieux returned to work "on or about the 21st of April of 2008." *Id.* He explains in his affidavit that upon his return to work he was "no longer the same person. I was filled with extreme anxiety, without self-esteem and convinced I was worthless and undeserving of anything good in my life." *Id.* He nonetheless filed a grievance protesting the award of the rural carrier position to Mr. Couture.

In June 2009, while in counseling for anxiety and depression, Mr. Cadieux "tried to bid" on a postal route that was again given to Mr. Couture. He filed another grievance, but the USPS "denied any knowledge of my original bid." *Id.* at 4. Mr. Cadieux learned of the non-posted PTF position in April 2010 and, after Postmaster Will's unsuccessful efforts to retain the positions, filed his May 19, 2010 EEOC complaint.

Mr. Cadieux summarizes his condition as follows:

From the time that I first learned that I would not get the first PTF position – in mid-February 2008 – until the time that I filed the EEOC complaint, I had been emotionally overwhelmed and could not bring myself to go to the EEOC. I could manage to get the tasks of my work at the Post Office done, at least partly because it was rote, but I was physically and emotionally so drained that I could hardly do anything else.

The job at the Postal Service was my livelihood, the means of my survival as well as the means by which I was able to take care of my mother. I was able to complain to my union shop steward because I thought they would take care of me. When I found they would not, it compounded the debilitating emotional impact. Confronting the Postal Service on my own, with no one to lean on or come to my aid, was impossible.

It was only after a year of seeing my psychiatrist, Dr. Andrew Stoll, that I was able to muster myself and go to the EEOC.

9

(Doc. 25-2 at 4.)

As with all equitable tolling, tolling due to a mental disorder is limited to exceptional circumstances. *See Biester v. Midwest Health Services, Inc.*, 77 F.3d 1264, 1268 (10th Cir. 1996). In determining whether there are exceptional circumstances, a court may look to the relevant state law for guidance with respect to tolling on the basis of a mental health issue. *See Hedgepeth v. Runyon*, 1997 WL 759438, at *4 (S.D.N.Y. Dec. 10, 1997) (citing *Speiser v. U.S. Dep't of Health and Human Servs.*, 670 F. Supp. 380, 384 (D.D.C. 1986), *aff'd*, 818 F.2d 95 (D.C. Cir. 1987)). In Vermont, a statute of limitations may be tolled due to a mental disability where the disability renders the moving party "unable to manage his business affairs or estate, or to comprehend his legal rights and liabilities." *Goode v. State*, 514 A.2d 322, 322 (Vt. 1986).

Mr. Cadieux has submitted correspondence from two of his health care providers, each of whom attest to his depression during the relevant time period. One of the letters, written by his psychiatrist, opines that "during this relevant period in question, [Mr. Cadieux was] unable to carry through with the task of seeking legal redress for [his] grievances due to [his] medical condition of Major Depressive Disorder, severe." (Doc. 25-3 at 1.) The USPS objects to the admissibility of these letters, noting that they are unsworn, and "unsworn letters do not constitute admissible evidence in opposition to summary judgment." *Stella v. Potter*, 2009 WL 792177, at *8 (E.D.N.Y. Mar. 23, 2009). However, as the *Stella* court noted in a case with similar facts, "[e]ven if they were admissible . . . they would be insufficient to demonstrate a genuine issue of material fact concerning the appropriateness of equitable tolling, given the other actions Plaintiff took during his period of alleged incapacitation to pursue his legal rights." *Id.*

Mr. Cadieux asserts that he was unable to contact an EEO counselor, but concedes that shortly after February 2008 he took various actions to assert his rights. First, after a telephone conversation with Ms. Moss, he contacted Postmaster Blaise and contested his alleged termination. Shortly thereafter, he returned to work and submitted a union grievance. In June 2008, Mr. Cadieux attempted to file a worker's compensation claim,

and in July 2008 complained to the Milton, Vermont Postmaster about his mistreatment in Colchester. In June 2009, Mr. Cadieux filed a second union grievance.

Courts have generally held that a plaintiff's efforts to pursue his legal rights while allegedly incapacitated undermine his claim for equitable tolling. *See, e.g., Chmiel v. Potter*, 2010 WL 5904384, at *10 (W.D.N.Y. Dec. 7, 2010) (declining to apply equitable tolling where plaintiff's depression did not make him "unable to comprehend and assert his rights," and he "appeared to comprehend his rights and contacted his union representative following his discharge"); *Victorial v. Burge*, 477 F. Supp. 2d 652, 655 (S.D.N.Y. 2007) (denying equitable tolling of deadline for filing habeas petition where plaintiff performed other tasks in pursuit of his rights during the period of alleged incapacitation); *Columbo v. United States Postal Serv.*, 293 F. Supp. 2d 219, 224 (E.D.N.Y. 2003) (finding no genuine issue of material fact regarding applicability of equitable tolling due to mental illness "[g]iven these instances in which the plaintiff claimed to have affirmatively acted in pursuit of her rights and her unsupported assertion that her mental illness rendered her incapable of making decisions"). The undisputed evidence in this case shows that Mr. Cadieux took various actions to protest his treatment and pursue his rights during his period of alleged incapacity. Although he claims that he was crippled by feelings of worthlessness and low self-esteem, he was plainly able to care for himself, return to work, and complain to his superiors and his union. Indeed, there is no indication in the record that his mental health issues rendered him "unable to manage his business affairs or estate, or to comprehend his legal rights and liabilities." *Goode*, 514 A.2d at 322. The court therefore finds that the undisputed facts do not present the sort of exceptional circumstances required to support equitable tolling, and that the USPS is entitled to summary judgment with respect to the February 2008 and June 2009 job awards.

    **C.**    **Whether the Refusal to Post Positions Constituted Discrimination.**

Because Mr. Cadieux contacted the EEOC in May 2010, and he allegedly became aware in April 2010 of District Management's refusal to post the open PTF positions, his

claim with respect to that refusal may be timely. The USPS therefore argues that this claim should be dismissed because Mr. Cadieux "does not allege any facts showing that he specifically suffered an adverse employment action *solely because of his disability*." (Doc. 18 at 9.) A discrimination claim must allege an adverse action based upon a disability. *See Sedor v. Frank*, 42 F.3d 741, 746 (2d Cir. 1994). "If the employer can show that its decision was motivated at least in part by a factor other than the plaintiff's disability, the Rehabilitation Act claim must be rejected." *Id*; *see also Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998) (RA plaintiff must show that he has been denied benefits "solely by reason of her or his disability"); *see also Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 129 (2d Cir. 1996) (noting that, in burden-shifting analysis, plaintiff has ultimate burden of persuasion to show that "defendant intentionally discriminated").

The undisputed record indicates that Mr. Cadieux raised the question of non-posted positions with Postmaster Ty Will, and that as a result the Postmaster twice asked District Management to post the positions. Both requests were rejected. There is no allegation that District Management knew of Mr. Cadieux's disability, or that its decision was targeted at a specific employee.

The USPS has submitted an affidavit from Nina Kelly, Complement Coordinator for the Northern New England District of the USPS in the Postal Service's Northeast Area Office. Ms. Kelly avers that the decision to "revert" (not post) the two PTF positions in Colchester was made by former Northeast Area Complement Coordinator Mark Gillis, after consulting with Ms. Kelly herself. She further states that the decision was "the result of a Postal Service Headquarters instruction to avoid the posting and staffing of new positions in the Postal Service." (Doc. 18-9 at 1-2.)

Mr. Cadieux has neither alleged any facts, nor offered any evidence, to support his claim that the decision to revert the two PTF positions was related to his disability. The decision-makers at the district level were not his supervisors, and to the extent that a direct supervisor was involved, Postmaster Will expressly requested that District

Management post the positions. Finally, Ms. Kelly's affidavit establishes, without contravention, that the decision was made pursuant to a general personnel policy.

The USPS has presented its argument for dismissal of this claim as a failure to state a *prima facie* claim under the RA. The court agrees that such a claim has not been stated, as Mr. Cadieux's allegations as currently pled do not "giv[e] rise to an inference of discrimination." *Collins v. New York City Transit Auth.*, 305 F.3d 113, 118 (2d Cir. 2002). The court notes, however, that self-represented litigants are usually allowed the opportunity to amend their pleadings "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999). In addition, summary judgment is generally disfavored when, as in the case, the parties have not had an adequate opportunity for discovery. *See Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) ("Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery."). Accordingly, the court will grant Mr. Cadieux thirty (30) days in which to amend his RA claim regarding the failure to post the PTF positions. *See Walton v. Waldron*, 886 F. Supp. 981, 984 (N.D.N.Y. 1995) (leave to amend granted after filing of summary judgment motion where "very little discovery" completed).

### D. Whether Mr. Cadieux's Hostile Work Environment Claim is Viable.

The USPS also argues that Mr. Cadieux has failed to state a viable claim of hostile work environment, although it is not clear that the Second Amended Complaint alleges such a claim. However, giving Mr. Cadieux's filings the required liberal reading, the court will consider the USPS's arguments. *See Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 240 (2d Cir. 2007) (inferring hostile work environment claim where plaintiff alleged continued harassment); *Pell v. Trustees of Columbia Univ.*, 1998 WL 19989, at *17 (S.D.N.Y. Jan. 21, 1998) ("Although § 504 does not specifically address harassment claims, the few courts considering this issue have held that hostile work environment harassment is actionable under the Rehabilitation Act."). The USPS

contends dismissal of this claim is required because: (1) Mr. Cadieux has failed to allege facts that are so severe and pervasive as to constitute a hostile work environment, (2) the claim is untimely, and (3) Mr. Cadieux's allegations do not connect the allegedly hostile environment to his disability.

To make out a *prima facie* case of hostile work environment, Mr. Cadieux must show: "(1) that his workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of his work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (internal quotation marks and alterations omitted); *see also Lucenti v. Potter*, 432 F. Supp. 2d 347, 361 (S.D.N.Y. 2006) (applying same hostile environment standard for claims based upon race, gender, and disability discrimination). "[H]ostile work environment claims are subject to demanding standards in order to avoid construing the statute as a general civility code." *Ghaly v. U.S. Dep't of Agric.*, 739 F. Supp. 2d 185, 196 (E.D.N.Y. 2010). Indeed, the Second Circuit as noted that "[e]veryone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination. Otherwise, the federal courts will become a court of personnel appeals." *Alfano v. Costello*, 294 F.3d 365, 377-78 (2d Cir. 2002).

Here, the allegations of hostility pertain solely to Supervisor Moss, focusing on her behavior between January 2008 and June 2009. That behavior includes her alleged statement, in response to Mr. Cadieux's suggestion that he might request FMLA leave while out of work after pleading guilty to negligent driving, that "there must be punishment." (Doc. 25-2 at 2.) Ms. Moss also allegedly criticized Mr. Cadieux unfairly; threatened to reduce his work hours; allowed another employee to remove items from his work area; and refused to accept his worker's compensation claim. Mr. Cadieux's

affidavit attests generally that "Ms. Moss was hard on me for many months . . . , often . . . complaining about my work and browbeating me." *Id.* at 3.

These allegations do not show "a linkage or correlation" to Mr. Cadieux's hip disability. *Alfano*, 294 F.3d at 377. When Ms. Moss allegedly stated that "there must be punishment," the comment was in the context of Mr. Cadieux's suggestion of FMLA leave while he was caring for his mother. Subsequent mistreatment allegedly occurred after he pled guilty to a criminal offense and required an extended absence from work. There is no indication in the pleadings and affidavits that Ms. Moss's other actions, including her threat to terminate Mr. Cadieux for lack of communication, were motivated by discriminatory animus. Mr. Cadieux does allege that Ms. Moss challenged his worker's compensation claim after he twisted his hip on the job, but this is the only incident that even mentions the hip issue, and such "[i]solated remarks . . . are insufficient to establish a hostile work environment claim." *Ashok v. Barnhart*, 289 F. Supp. 2d 305, 312 (E.D.N.Y. 2003) (citing *Schwapp*, 118 F.3d at 110).[1]

Although Mr. Cadieux's claim is not sufficient to survive summary judgment, the court again notes that there has been no discovery in this case. Accordingly, Mr. Cadieux may amend his pleadings with respect to this claim. The motion for summary judgment is GRANTED, with leave to amend within thirty (30) days.

## CONCLUSION

For the reasons set forth above, the USPS's motion (Doc. 18), construed as a motion for summary judgment, is GRANTED. Mr. Cadieux's claims concerning the

---

[1] The USPS also argued, initially, that Mr. Cadieux's hostile environment claim is untimely because a charge must be brought within 300 days of the allegedly offending conduct. In its reply memorandum, however, the USPS withdraws this argument as having been "in error," and instead relies on the forty-five day counseling deadline discussed above. (Doc. 26 at 9 n.3) Mr. Cadieux has not had an opportunity to respond to this argument in the context of his hostile environment claim, and the court generally does not address arguments first raised in a reply brief. *See Ernst Haas Studio, Inc. v. Palm Press, Inc.*, 164 F.3d 110, 112 (2d Cir. 1999); *see also Kowalski v. YellowPages.com, LLC*, 2012 WL 1097350, at *10 (S.D.N.Y. Mar. 31, 2012) ("Arguments made for the first time in a reply brief need not be considered by a court."). Moreover, the USPS does not address Mr. Cadieux's claim that his mistreatment has been ongoing.

award of positions to another employee in 2008 and 2009 are time-barred, and are DISMISSED WITHOUT PREJUDICE. His claim concerning the USPS's failure to post open positions in 2010 is also DISMISSED WITHOUT PREJUDICE, but he may amend that claim within thirty (30) days. Finally, Mr. Cadieux's claim of a hostile work environment is DISMISSED WITHOUT PREJUDICE, again with leave to amend within thirty (30) days.

The Third Amended Complaint must comply with Rule 8(a) of the Federal Rules of Civil Procedure, in that it must clearly state the grounds for relief and include legible factual allegations, and will completely supersede all prior pleadings. If Mr. Cadieux fails to file his Third Amended Complaint within thirty (30) days, this entire case will be DISMISSED WITHOUT PREJUDICE.

SO ORDERED.

Dated at Rutland, in the District of Vermont this 13th day of July, 2012.

*/s/ Christina Reiss*

Christina Reiss, Chief Judge
United States District Court